Filed 1/31/22

**<u>CERTIFIED FOR PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PANTERRA GP, INC.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>    Respondent;<br><br>ROSEDALE BAKERSFIELD RETAIL VI, LLC, et al,<br><br>    Real Parties in Interest. | F080377<br><br>(Kern Super. Ct. No. BCV-18-102668)<br><br>**OPINION** |

-ooOoo-

ORIGINAL PROCEEDINGS; petition for writ of mandate. Stephen D. Schuett, Judge.

Clark Hill, James C. Earle, Renee S. Diaz, Richard E. Nakamura, Jr., and Pamela A. Palmer, for Petitioner.

No appearance for Respondent.

Parker, Milliken, Clark, O'Hara & Samuelian, Thomas E. Shuck and Alan D. Weinfeld, for Real Party in Interest Movie Grill Concepts XX, LLC.

Cox, Castle & Nicholson, and Trevor B. Potter, for Real Party in Interest Rosedale Bakersfield Retail VI, LLC.

-ooOoo-

**SEE DISSENTING OPINION**

Panterra GP, Inc. (Panterra GP)[1] filed the underlying action against, inter alia, Rosedale Bakersfield Retail VI, LLC (Rosedale) and Movie Grill Concepts XX, LLC (Movie Grill). Panterra GP sought payment from the defendants for work it allegedly performed on a construction project. Defendants filed a demurrer to Panterra GP's third amended complaint, relying largely on Business and Professions Code section 7031, subdivision (a).[2] The trial court sustained the demurrer without leave to amend.

We conclude that section 7031, subdivision (a) has no applicability to claims asserted by Panterra GP, Inc., because it was licensed as a contractor at all relevant times. We also reject the remaining arguments of real parties in interest. Consequently, we will direct that the trial court vacate its order sustaining the demurrer to Panterra GP, Inc.'s amended complaint, and to issue a new order overruling said demurrer.

## BACKGROUND

*Allegations in the Operative Pleading*

On review of an order sustaining a demurrer, we accept as true the factual allegations of the complaint. (*Glen Oaks Estates Homeowners Assn. v. Re/Max Premier Properties, Inc.* (2012) 203 Cal.App.4th 913, 919.)

Assessing the facts in this manner leaves us with the following situation. Panterra GP is a licensed general contractor. Rosedale and Movie Grill intended for Panterra GP to perform renovation work on the Studio Movie Grill in Bakersfield, California. Despite this intent, defendants drafted a contract that mistakenly listed a different entity – Panterra Development Ltd., L.L.P. (Panterra Development)– as the contractor for the project. Panterra Development is not licensed as a contractor in California. Panterra GP is the general partner of Panterra Development.

---

[1] The operative complaint identified plaintiff as "Panterra G P Inc." However, records filed with the Secretary of State contained in the exhibits to the petition for writ of mandate indicate the entity's name is "Panterra GP, Inc." We will use the latter in this opinion.

[2] All further statutory references are to the Business and Professions Code unless otherwise stated.

Despite the mistake in the written contract, Rosedale and Movie Grill knew, intended and agreed that, in fact, Panterra GP would act as the general contractor and would perform the work contemplated by the agreement. And, indeed, that is what happened. Panterra GP acted as general contractor for the project and actually performed the remodeling work. Accordingly, the permit applications and building permits issued for the project by the City of Bakersfield correctly reflect that Panterra GP. was the contractor. The "Certificate of Occupancy," issued on April 16, 2018, also correctly reflects that Panterra GP was the contractor.[3]

After Panterra GP completed the work, Rosedale refused to pay more than $2,609,666 owed under the contract. Panterra Development filed a mechanic's lien identifying itself as the contractor to the project.

Panterra GP seeks reformation of the contract to reflect the true agreement of the parties (see Civ. Code, § 3399) and recovery of the millions of dollars it is owed for its work.[4]

Because Movie Grill contends that the sham pleading doctrine applies, we will next summarize prior pleadings in the case.

### Panterra GP's First Amended Complaint

Panterra GP's first amended complaint, filed on November 21, 2018, raised claims for "recovery on mechanic's lien release bond"; "breach of contract"; "account stated"; and "open book account." (Unnecessary capitalization omitted.)

---

[3] From the first amended complaint through the operative third amended complaint, Panterra GP has repeatedly alleged that it was the general contractor for the project and actually performed the work. Panterra GP has also repeatedly alleged that *it* was the entity that entered the agreement to perform the work.

[4] Movie Grill filed a cross-complaint seeking disgorgement of more than $7 million it previously paid to Panterra Development. Movie Grill alleged that it was Panterra Development that acted in the capacity of a contractor under the parties' agreement.

The first amended complaint alleged that Panterra GP entered into an agreement with Rosedale under which Panterra GP would furnish all labor, material, equipment, and services as general contractor for the Movie Grill project. The complaint further alleged that Panterra GP performed the contract by acting "as a general contractor for the construction and improvements at the Project" from May 9, 2017, forward. Rosedale breached the agreement by failing to pay $2,609.666.53 owed under the agreement.

Three exhibits were attached to the first amended complaint.

The first exhibit, Exhibit A, was an American Institute of Architects form contract, "Document A102-2007" (Standard Form of Agreement Between Owner and Contractor). The contract, dated May 9, 2017, identified "the Owner" as Rosedale and "the Contractor" as Panterra Development. The contract between Rosedale identified the relevant "Project" as a "Renovation for Studio Movie Grill" in Bakersfield. The contract was signed on behalf of "Panterra Development Ltd., L.L.P." by "Sean W. Rea, President of Panterra GP, Inc., The Sole General Partner of Panterra Development Ltd., L.L.P."

The contract contains the following text:

"ADDITIONS AND DELETIONS:

The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

"This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification."

The contract contains several vertical lines in its left margin, including where Panterra Development, is identified as the "Contractor."

The second exhibit attached to the first amended complaint, exhibit B, consisted of documents related to a mechanics lien; the mechanics lien was recorded by "Panterra

4.

Development Ltd., L.L.P." on July 17, 2018.  The claim for the mechanics lien noted the "Claimant" under the mechanics lien was "Panterra Development Ltd., L.L.P., dba Panterra Construction."  The lien stated that "[c]laimant served as the general contractor for the Project."  The lien was signed on behalf of "Panterra Development Ltd., L.L.P. dba Panterra Construction" by "Panterra G P, Inc., its sole general partner" by Sean W. Rea, President of Panterra GP.  Rea also signed a verification, under penalty of perjury, that the "contents" of the lien were "true."

The third exhibit attached to the first amended complaint, exhibit C, consisted of documents related to a "Partial Release of Mechanics Lien," dated October 2, 2018.  The "Claimant" was identified as "Panterra Development Ltd., L.L.P. dba Panterra Construction."  The partial release of mechanics lien further stated that "[c]laimant furnished the labor, materials, equipment, services and/or work" underlying the mechanics lien, to Rosedale.  The partial release of mechanic's lien was signed on behalf of "Panterra Development Ltd., L.L.P. dba Panterra Construction" by "Panterra G P, Inc., its sole general partner" by Sean W. Rea, President of Panterra GP.  Rea also signed a verification, under penalty of perjury, that the "contents" of the partial release of mechanic's lien were "true."

Movie Grill filed a demurrer to the first amended complaint and on February 11, 2019, the trial court sustained the demurrer with leave to amend.  The trial court stated: "First-amended Complaint is brought [by] plaintiff Panterra [GP], Inc., the sole general partner of Panterra Development, Limited, L.L.P.  Plaintiff has alleged to be a corporation under Texas and California laws.  Panterra [GP, Inc.] alleges it entered into an agreement with Rosedale[.]  Exhibit A [to the first amended complaint] indicates that the party that entered into the agreement with Rosedale is Panterra Development, Ltd., L.L.P., not Panterra [GP], Inc.  Given the lack of allegations that establish Panterra [GP]'s standing to act on behalf of Panterra Development, Limited, L.L.P., the demurrer on standing as to all cause[s] of action will be sustained with leave to amend."

### *Panterra GP's Second Amended Complaint*

On April 8, 2019, Panterra GP, filed its second amended complaint. The second amended complaint raised the same four claims as the first amended complaint: "recovery on mechanic's lien release bond"; "breach of contract"; "account stated"; and "open book account." (Unnecessary capitalization omitted.)

The second amended complaint again alleged that Panterra GP and Rosedale entered into an agreement whereby Panterra GP was to furnish all labor, materials, supplies and equipment necessary to perform the construction and improvements at the Movie Grill project. The complaint alleged that "Panterra GP, Inc. was designated as the contractor" under the agreement. The complaint further alleged that Panterra GP was listed as the contractor on the building permit and certificate of occupancy. The building permit and certificate of occupancy were attached as exhibits.

The second amended complaint further alleged that Panterra GP has exclusive control over the management of Panterra Development's business. The complaint further alleged that Panterra GP is authorized to exercise the powers of Panterra Development as an authorized representative.

There were several other exhibits to the second amended complaint. The written contract was again attached to the complaint as exhibit A. Exhibit B consisted of documents establishing that Panterra GP had a valid California contractor's license during the period from November 10, 2014, and November 30, 2018. Exhibit E consisted of documents showing that Panterra GP was registered as a corporation in both Texas and California. Exhibit F consisted of documents concerning the mechanics lien recorded by Panterra Development on July 17, 2018 (these documents were also attached to the first amended complaint and are described above). Exhibit G consisted of documents concerning the partial release of mechanics lien recorded by Panterra Development on October 3, 2018 (these documents were also attached to the first amended complaint and are described above). Exhibit J contained the partnership agreement for Panterra

Development.  The agreement was made by and among Panterra GP, as the sole general partner, and multiple limited partners, under Texas law.  The agreement states that "[t]he purpose of the Partnership shall be to engage in any lawful act or activity for which limited partnerships may now or hereafter be organized under the laws of the State of Texas, including the business of providing real property development services."  Exhibit K consisted of documents pertaining to a bond to release mechanics lien recorded by Movie Grill and its surety company. The bond to release mechanic's lien was executed by Movie Grill on October 18, 2018.  The bond references the lien in the name of Panterra Development dba Panterra Construction.

On May 20, 2019, the trial court sustained the defendants' demurrer.  The court observed that Panterra GP had filed an "ex parte request seeking leave to file an amended complaint to allege an additional cause of action to reform the Agreement due to unilateral or mutual mistake."  However, the court noted:  "As counsel for Panterra [GP] conceded at oral argument on the demurrer, the theory of reforming the Agreement based on mistake and thereby putting Panterra [GP] in the position of being the Contractor does not save the cause of action to enforce the mechanic's lien recorded in the name of Panterra Development as the lien claimant.  For that reason, the demurrer to the First Cause of Action is sustained without leave to amend."  The court granted leave to amend the remaining causes of action so that plaintiff could raise its "new theory of mistake with respect to the contract."

### Panterra GP's Third Amended Complaint

Panterra GP, filed a third amended complaint, as summarized above.  Movie Grill filed a demurrer to the third amended complaint; to which Rosedale joined.  The court held a hearing on the demurrer to the third amended complaint on July 26, 2019.  The court issued a written ruling on the defendants' demurrer to the third amended complaint

7.

on September 16, 2019.[5]  For purposes of its ruling, the trial court took judicial notice of documents provided by Movie Grill, including, inter alia, corporate documents on file with the Texas Secretary of State for Panterra GP; partnership registration documents on file with the Texas Secretary of State for Panterra Development; a certification from the California Contractors' State License Board to the effect that no records of licensing existed for Panterra Development; the trial court's order denying Panterra GP's ex parte application to dismiss petition to remove mechanics lien, for failure to establish standing to bring the application; and Panterra GP's second amended complaint and attached exhibits.

The trial court ruled:

> "In its Third Amended Complaint, plaintiff Panterra GP, Inc. seeks to recover money it claims is owed to it by defendants as a result of non-payment under the terms of a construction agreement.  The First Cause of Action seeks to have the court reform the construction contract in which Panterra Development, Ltd., L.L.P. is the named party as the contractor in order to substitute in Panterra GP, Inc. as the named contractor.

> "The construction project which is the subject of this lawsuit is commonly referred to as Studio Movie Grill Bakersfield (the 'Project') and is located at 2733 Calloway Drive, in Bakersfield, CA (the 'Property'). The Property owner, Rosedale Bakersfield Retail VI, LLC ('Rosedale') entered into a lease agreement with Movie Grill Concepts XX, LLC ('Movie Grill'), whereby Movie Grill, as a tenant on the Property, would develop and operate a movie theater business.  Rosedale also entered into an AIA-form agreement ('the Agreement'), with general conditions of approval, with Panterra Development Ltd., L.L.P. ('Panterra Development') for the construction of the movie theater and related improvements on the Property.  The Agreement is Exhibit 'A' to the Third Amended Complaint.

> "In the Agreement, Panterra Development is identified as the Contractor.  Panterra [GP, Inc.] is identified as the sole General Partner of Panterra Development and the Agreement is signed by Sean W. Rea,

---

[5] Movie Grill argues that, because Panterra GP failed to include this ruling and other portions of the record, we should summarily deny the petition.  (See Rules of Court, rule 8.486(b)(4).)  We decline to summarily deny the petition.

8.

president of Panterra [GP, Inc.]  The sole general partner of Panterra Development, on behalf of Panterra Development.

"The Second through Fourth Causes of Action are for breach of contract, account stated and open book account seeking damages in the amount of $2,997,545.75 for the alleged failure of defendants to pay Panterra for the work done on the Project.  [¶] … [¶]

"Defendant Movie Grill demurs generally to all causes of action because they fail to state any cause of action.  Defendant Rosedale joins in the demurrer.  [¶] … [¶]

"The issue presented by the demurrer to the Third Amended Complaint is whether a part[y] may rely on equitable principles to 'reform' a contract in order to overcome the failure of the party identified in the construction contract as the contract[or] to have a valid contractor's license as required by California's Contractors' State License Law as contained in Business and Professions Code section 7031.  Unfortunately for plaintiff, it is well-established that equitable theories cannot overcome a failure to have a proper license. *Judicial Council of California v. Jacobs Facilities, Inc*. (2015) 239 Cal.App.4th 882, 911.

"Apart from the fundamental policy of the Contractors' State License Law and the refusal of courts to allow the use of equitable principles to evade its requirements, other principles of equity preclude the cause of action for reformation.  Reformation cannot be used to substitute an entirely new party to a contract. *Mabb v. Merriam* (1900) 129 Cal. 663, 664.  Although plaintiff asserts that Panterra GP is not a 'stranger' to the contract because its president signed the contract as the authorized signer on behalf of Panterra [Development].  However, Panterra GP is a separate and distinct legal entity from Panterra [Development] and is the general partner of Panterra [Development].  It was a corporation acting in its representative capacity as the general partner of Panterra [Development]. Under these circumstances, the Court cannot substitute an entirely new and distinct entity into the contract.

"For these reasons, the demurrer to the first cause of action is sustained without leave to amend.

"Because the Second through Fourth causes of action rely on the substitution of Panterra GP as the contractor under the terms of the construction contract, these causes of action also fail.  Therefore the demurrers to these causes of action are sustained without leave to amend.

9.

"Panterra GP requests leave to amend to assert a quantum meruit claim against Movie Grill because as the entity with a valid contractor's license that actually performed the construction work it would be entitled to claim compensation for that work. Panterra GP can certainly bring an action in its own name to assert such a claim."

Panterra GP filed a petition for writ of mandate in this court. Movie Grill, one of the real parties in interest, filed a letter brief in response. This court issued an order to show cause. Movie Grill filed a return, and Panterra GP filed a reply.

## DISCUSSION

**I.       Section 7031, Subdivision (a) Poses no Barrier to Panterra GP's Suit**

**A.       *Law***

**Demurrers**

"When the trial court sustains a demurrer, we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] ' "As a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court." ' [Citation.] We accept as true all properly pleaded material factual allegations of the complaint and other relevant matters that are properly the subject of judicial notice, and we liberally construe all factual allegations of the complaint with a view to substantial justice between the parties. [Citation.] We also consider any exhibits to the complaint. [Citation.]" (*Glen Oaks Estates Homeowners Assn. v. Re/Max Premier Properties, Inc.*, *supra*, 203 Cal.App.4th at pp. 918–919.)

" 'A demurrer is simply not the appropriate procedure for determining the truth of disputed facts.' [Citation.] The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable. [Citation.]" (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.)

10.

### Section 7031, Subdivision (a)

Movie Grill contends that section 7031, subdivision (a) supports its demurrer. Section 7031, subdivision (a)[6] prohibits any action to collect compensation " '*for the performance* of any act or contract where a license is required' " by a person engaged in the business or acting in the capacity of a contractor without a license. By its terms, subdivision (a) prevents unlicensed entities from recovering compensation "regardless of the balance of the equities or the manner in which the claim is framed." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 435.)

### B.    Analysis

As Movie Grill acknowledges and the trial court concluded, while Panterra GP is a general partner of Panterra Development, the two are legally distinct entities. The former has been licensed as a contractor at all relevant times, and the latter has been unlicensed at all relevant times. It seems clear that, as an unlicensed entity, Panterra Development would be barred by subdivision (a) from recovering *any* compensation on *any* theory for its performance of *any* act or contract requiring licensure. But Panterra Development is not the plaintiff here; Panterra GP is. And as broadly as subdivision (a) prohibits suits by unlicensed entities, it poses no obstacle whatsoever to claims by licensed entities.[7] (See § 7031, subd. (a).) Subdivision (a) provides no basis for a demurrer to a complaint by Panterra GP.[8]

---

[6] Hereafter, we will use "subdivision (a)" to refer to this statutory provision.

[7] So long as the license was in effect "at all times during the performance of [the] act or contract …." (§ 7031, subd. (a).)

Similarly, section 7031, subdivision (b) has no applicability to Panterra GP. That provision refers solely to disgorgement of compensation paid to "unlicensed contractor[s]."

[8] Because Panterra GP is in strict compliance with the statute, we need not consider whether it would qualify for substantial compliance under section 7031, subdivision (e).

It seems clear that the language of section 7031 does not bar the claims of Panterra GP. Instead, the issue raised in the dissent focuses on pleading rules, which we will address below.

Certainly, the claims of Panterra GP, Inc. may ultimately fail for other reasons. For example, Movie Grill may be able to prove at trial that Panterra Ltd., L.L.P. – and not Panterra GP – truly did perform as contractor on the project, and that the written contract was not mistaken in its identification of the agreed-upon contractor. In that scenario, Panterra GP's cause of action for breach of contract would then likely fail a result of other legal concepts – e.g., privity, standing, contract law – but *not* because of subdivision (a).[9]

However, Movie Grill tries to achieve this result *before* trial, arguing that Panterra Development was the true contractor for the project and the complaint's allegations to the contrary are false. However, this contention is untenable at the pleadings stage. " 'One of the dangers of winning on demurrer is that you are stuck, on appeal, with your opponent's version of the facts, …' " (*Silguero v. Creteguard, Inc.* (2010) 187 Cal.App.4th 60, 64.)

## II. The Exhibits to Complaint do not Establish at the Pleadings Stage that the Complaint is Defective

Below, Movie Grill requested, and the trial court granted, judicial notice of Panterra GP's second amended complaint. Movie Grill cites several exhibits to that complaint – i.e., a mechanic's lien, partial release of lien, and bond to release mechanic's lien – and argues that Panterra GP was prohibited by the sham pleading doctrine from asserting "new allegations" inconsistent with these documents.

---

[9] Indeed, these concepts played a central role in the court's sustaining of a demurrer to the second amended complaint.

**A.** *Law*

"In determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed. [Citation.] 'Accordingly, a complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective.' [Citation.] [¶] Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning. [Citation.] On a demurrer[,] a court's function is limited to testing the legal sufficiency of the complaint. [Citation.] 'A demurrer is simply not the appropriate procedure for determining the truth of disputed facts.' [Citation.] The hearing on demurrer may not be turned into a contested evidentiary hearing through the guise of having the court take judicial notice of documents whose truthfulness or proper interpretation are disputable. [Citation.]" (*Joslin v. H.A.S. Ins. Brokerage*, *supra*, 184 Cal.App.3d at p. 374.) Consequently, "judicial notice of matters upon demurrer will be dispositive only in those instances where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed." (*Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134.)

Additionally, "a plaintiff is bound by an allegation in an earlier version of the complaint even though the allegation is omitted from later versions, but this rule is subject to the exception that a party will be allowed to correct a pleading by omitting an allegation made as a result of mistake or inadvertence. [Citation.]" (*Joslin v. H.A.S. Ins. Brokerage*, *supra*, 184 Cal.App.3d at p. 375.)

**B.** *Analysis*

There are several issues with Movie Grill's contention. First, the core factual assertions regarding the identity of the contractor for the project are not "new allegations." Panterra GP has repeatedly alleged, across its amended complaints, that *it* was the general contractor for the project and actually performed the work. Panterra GP

has also repeatedly alleged that *it* was the entity that entered into the agreement to perform the work.[10]

Second, courts may not turn a demurrer into a contested evidentiary matter by determining what the " ' "proper interpretation" ' of the evidence" is. (*Mize v. Mentor Worldwide LLC* (2020) 51 Cal.App.5th 850, 865.) A court errs when its decision reflects such a consideration of the evidence. (*Ibid.*) The complaint's allegation that Panterra GP was the actual agreed upon contractor is not wholly and necessarily negated by the fact that some documents – created *after* the formation of the contract *and* its subsequent performance – identify another entity as the contractor. Instead, the exhibits cited by Movie Grill merely create a dispute as to the ultimate fact of whether Panterra GP indeed was the agreed upon contractor. On the one hand, the lien and related documents may support inferences contrary to the allegations of the complaint. On the other hand, the building permit, certificate of occupancy and, most importantly, the allegations of the complaint, support Panterra GP's case.[11] It is for a finder of fact to consider all the evidence to determine whether the complaint's allegations are true. That determination

---

[10] The dissent points to the second amended complaint, which asserted that while the contract identified Panterra Development as the contractor, that identification also encompassed Panterra GP because it is the authorized representative of Panterra Development. The dissent then cites the third amended complaint's allegations that the contract did not correctly reflect the identities of the parties to the agreement. There is nothing contradictory between the allegation that the contract mistakenly identified Panterra Development when it should have identified Panterra GP; and the position that the contract's identification of Panterra Development does not preclude recovery by Panterra GP because of the latter's status as the former's authorized representative. Pleading alternative theories of recovery "does not run afoul of truthful pleading." (*Williams v. Southern California Gas Co.* (2009) 176 Cal.App.4th 591, 598.)

[11] Movie Grill suggests that it would encourage fraud if Panterra GP's insertion of its name on the building permit or tax documents defeated a demurrer. A necessary and implicit assumption of this argument is that the listing of Panterra GP as the contractor on the building permit was factually incorrect (otherwise it would not be fraudulent). But that is the core dispute of this case – and one we will not resolve at the pleadings stage.

14.

cannot be made at the pleadings stage, it must be made following summary judgment proceedings or a trial.[12]

Third, even if pleading rules operated as broadly as Movie Grill suggests, such that *all* statements in exhibits are binding admissions that *always* prevail over any seemingly contrary allegations in the complaint to which they are attached,[13] we would still face a problem. There are statements in some exhibits indicating that Panterra

---

[12] The present case is different from our decision in *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71 (*Opp*), which was a summary judgment case. There, we concluded there was "no evidence" the licensed individual was the actual contracting party, rather than his unlicensed corporation. (*Id.* at p. 76.) In the present case, we are not evaluating evidence. We are concerned with *allegations* of fact in the complaint. And the present complaint *does* sufficiently allege that Panterra GP was the actual contracting party. Of course, these allegations could be disproven at summary judgment or trial. As Panterra GP acknowledges, the issue will likely be "vigorously litigated." But we cannot resolve this crucial issue during the pleadings stage.

Moreover, the contractor in *Opp* argued he should be deemed a party to the contract "because his individual contractor's license number was used repeatedly in the [contract] documents." (*Opp*, *supra*, 154 Cal.App.4th at p. 76.) That is not a proper basis for reforming a contract. In contrast, the allegations of Panterra's complaint *do* state a proper claim for reformation: that the written contract failed to express the actual intention of the parties. (Civ. Code, § 3399.)

[13] This is a premise with which we disagree. It is true that when there is a conflict between a complaint's allegations and exhibits that is direct and indisputable, the exhibit will prevail. For example, where a complaint alleges that a written contract contains certain text, but the contract is attached to the complaint and does not contain the alleged text, then the assertion in the complaint can be disregarded. There, the allegation in the complaint is directly and plainly contradicted by the exhibit. Moreover, that application does not require the court to assume the underlying truth of any fact asserted in an exhibit.

However, if the contrary exhibit statement on which defendants rely conveys a legal conclusion (rather than a factual one) or the exhibit statement is ambiguous, it cannot support a demurrer. (See *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83; Cal. Prac. Guide Civ. Pro. Before Trial Ch. 7(I)-A ¶ [7:47.3].) Consequently, it is an overstatement to say that statements in exhibits always prevail over seemingly contradictory allegations in the complaint. We think that exhibits to a complaint should be subject to the same rule as documents of which the court takes judicial notice: on demurrer, courts may not resolve a dispute as to the underlying truth of their statements or the "proper interpretation" thereof.

Development was the contractor, but there are also statements in other exhibits indicating that Panterra GP was the contractor. For example, while the lien states Panterra Development was the contractor, the building permit states Panterra GP was the contractor. Thus, even if we accepted the legal premise underlying Movie Grill's argument – which we do not – it would merely lead to a stalemate of conflicting "admissions." Resolving such a factual/evidentiary stalemate at the pleadings stage would be to prematurely determine the " ' "proper interpretation" ' " of the evidence. (See *Mize v. Mentor Worldwide LLC*, *supra*, 51 Cal.App.5th at p. 865.)

The dissent discounts the exhibits supporting plaintiff's position (i.e., the building permit and certificate of occupancy) by positing that those documents concern the issue of who actually performed the work on the project rather than the identity of the contracting party. Yet, the dissent itself finds the mechanic's lien relevant precisely because it purportedly identifies who actually performed the work on the project (i.e., who furnished the labor, materials, equipment, services and/or work for the project). (Dis. opn., *ante*, at p. 22.) All three documents are germane to the issue of who acted as contractor for the project.

Movie Grill also points to the fact that Panterra Development was formed for the purpose of providing real property development services.[14] But that fact does not conflict with the allegation that Panterra GP was the (1) entity the parties agreed would act as general contractor on this particular project and (2) the entity that actually did perform as the contractor on this particular project.

---

[14] Movie Grill also contends that paragraph 17 of the second amended complaint says Panterra Development was registered as a limited liability partnership "to avoid liability." While we are not certain we concur in Movie Grill's reading of that paragraph, the more important point is that it would not be dispositive even if true. That Panterra Development may have been organized as a limited liability partnership in order to limit liability is not inconsistent with the allegation that Panterra GP was the contractor for the Movie Grill project.

## III. Panterra GP Alleged Facts Sufficient to Support a Claim for Reformation

"When, through … mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, …"[15] (Civ. Code, § 3399.)

Although "reformation" is sometimes casually referred to as a cause of action, it is actually a remedy. Reformation is not the court *creating* a *new* agreement but rather *enforcing* the *actual* agreement *already made* by the parties.[16] (*Ramseier v. Oakley Sanitary Dist.* (1961) 197 Cal.App.2d 722, 725.)

The operative complaint alleged a prima facie case for reformation. The complaint alleged that Rosedale and Movie Grill intended for Panterra GP to perform the work and that, despite this mutual intent, defendants drafted a contract that mistakenly listed Panterra Development as the contractor for the project.

Movie Grill contends that Panterra GP's pursuit of reformation is improper because reformation is an equitable remedy and equitable remedies are foreclosed by subdivision (a). It is true that subdivision (a) precludes equitable remedies. But it only does so with respect to equitable remedies *sought by an unlicensed entity*. Panterra GP is not an unlicensed entity.

Movie Grill also argues that the reformation sought by Panterra GP is not permitted under a Supreme Court case from 1900: *Mabb v. Merriam*, *supra*, 129 Cal. 663. That decision prohibited a court of equity from making a "new contract" –

---

[15] So long as the revision "can be done without prejudice to rights acquired by third persons, in good faith and for value." (Civ. Code, § 3399.)

[16] Movie Grill argues Panterra GP should not be permitted to "step into the shoes" of a different entity (i.e., Panterra Development). However, a more accurate characterization of the operative complaint's allegations is that they were Panterra GP's shoes all along. While Movie Grill may be able to disprove that characterization at the proper time, it cannot do so now.

rather than merely reforming it – by substituting one party for another. On this basis, Movie Grill argues that "[r]eformation cannot be used to substitute parties to a contract."

However, Civil Code section 3399 permits reformation of a contract upon application of any aggrieved party. Under this statute, "[t]he right to reformation of an instrument is not restricted to the original parties to the transaction [citation]." (*Shupe v. Nelson* (1967) 254 Cal.App.2d 693, 698; *Watson v. Collins* (1962) 204 Cal.App.2d 27, 32.) Thus, "the proposition that a person cannot be made a party to a written instrument by reformation is an overstatement." (5 Witkin, Cal. Procedure (5th ed. 2020) Pleading, § 805.) "No 'new contract' is made when the plaintiff, on a proper showing of … mistake, asks to have the writing conform to the original oral agreement" concerning the parties to the contract. (*Ibid.*)

Nonetheless, Movie Grill insists that *Mabb* serves to limit the scope of Civil Code section 3399, even though *Mabb* did not even cite – much less discuss or analyze – the statute. Not so. "Opinions are not authority for matters not considered. [Citation.]" (*Gonzales v. Superior Court* (1995) 37 Cal.App.4th 1302, 1311, fn. 8.) Moreover, a supreme court decision cannot stand against contrary dictates from a statute the decision failed to address. (See *Fluor Corp v. Superior Court* (2015) 61 Cal.4th 1175, 1182; see also *id.* at pp. 1180–1182, 1221–1224.)

Movie Grill also relies on *Wilson v. Shea* (1924) 194 Cal. 653 (*Shea*), but that case offers no help. In holding that reformation was unavailable in that case, the *Shea* court relied on the lack of sufficient allegations in the complaint. (*Id.* at pp. 656–657.) Importantly, the complaint in *Shea* did not allege that "the defendants in executing [the] contract acted under any mistake as to who were the parties thereto, …" (*Id.* at p. 657.) In contrast, Panterra GP's operative complaint case does make such allegations.

Movie Grill next contends that reformation is not available because a contract made by an unlicensed person in violation of the licensing laws is void. This argument merely assumes the key matter in dispute: whether the agreement at issue here was "made

18.

by an unlicensed person." Panterra GP contends that the actual agreement between the parties was that *it* would act as contractor, and that the written contract failed to reflect that true agreement. If we accept that allegation as true, as we must, then the agreement here is not one "made by an unlicensed person."

Movie Grill argues that reformation is not available because Panterra GP has made a mistake caused by "the neglect of a legal duty." (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1074.) Specifically, that Panterra GP neglected its legal duties by: (1) failing to request an addition or deletions report; and (2) failing to consult with an attorney about the insertion of Panterra Development as the Contractor and the legal consequences of the insertion. However, Movie Grill cites nothing in the complaint or judicially noticed matters to support either assertion.

Movie Grill posits that permitting Panterra GP's reformation claim would open the floodgates to litigation because "every unlicensed contractor would sue for reformation to add the name of a licensed contractor to the construction contract." We disagree. First, bringing a suit for reformation in the name of a licensed contractor will only be an option to those unlicensed contractors who control or can sufficiently influence a licensed contractor. Second, reformation would only be available to those plaintiffs who subsequently *prove* that the written contract fails to express the true intention of the parties to hire the *licensed* entity as contractor due to "mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected." (Civ. Code, § 3399.) And, under Civil Code section 3399, the remedy of reformation *should* be available to such plaintiffs.

## CONCLUSION

The purpose of section 7031 is to encourage adherence to the licensing laws and to deter persons from offering or providing unlicensed contractor services for pay. (*MW Erectors v. Niederhauser Ornamental & Metal Works Co., Inc.*, *supra*, 36 Cal.4th at p. 430; see *Manela v. Stone* (2021) 66 Cal.App.5th 90, 109.) Neither purpose is thwarted

19.

by reforming a contract to reflect the reality that several parties agreed to hire a *licensed* contractor for renovation work.

Given the facts asserted by the operative complaint, overruling the demurrer is not only compelled by law, but necessary prevent defendants from walking away with a massive windfall without Panterra GP ever having its day in court.

## DISPOSITION[17]

Let a peremptory writ of mandate issue directing the respondent court to set aside its order sustaining defendants' demurrer to the third amended complaint and to enter an order overruling said demurrer. Panterra GP shall recover costs. (Cal. Rules of Court, rule 8.493.)

POOCHIGIAN, J.

I CONCUR:

HILL, P. J.

---

[17] After Panterra GP filed its reply brief, Movie Grill, the real party in interest, filed a motion for sanctions, asking this court to impose $5,845 in sanctions against Panterra GP and its counsel, Clark Hill L.L.P., pursuant to California Rules of Court, rule 8.492. Movie Grill alleged in its motion for sanctions that Panterra GP's reply brief "unreasonably (and intentionally) misstated the law concerning judicial admissions and the sham pleading doctrine and flagrantly miscited a case, in violation of California Rules of Court[, rule 8.204(a)(1)(B)]." More specifically, Movie Grill alleged: "Knowing that Panterra GP was cornered by the sham pleading doctrine, Clark Hill and [Richard] Nakamura [counsel for Panterra GP] deliberately miscited *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437." We do not agree that Panterra GP "miscited" *Minish*. Movie Grill's motion for sanctions is denied.

20.

SMITH, J., Dissenting.

I respectfully dissent from the majority opinion. The majority, in this rather straightforward case, has gone to great lengths to reverse the trial judge, when the latter correctly resolved this case in accordance with settled pleading rules, well-established tenets of the Contractors State Licensing Law (CSLL, Bus. & Prof. Code, § 7000 et seq.),[1] and binding California Supreme Court precedent—*Mabb v. Merriam* (1900) 129 Cal. 663—limiting the scope of contract reformation.

This case revolves around two legally distinct but related entities. One, Panterra Development Ltd., L.L.P., is a partnership and does not have a California contractor's license. The other, Panterra GP, Inc., is a corporation and has a California contractor's license. The corporate entity, Panterra GP, Inc. is the general partner of the partnership, Panterra Development Ltd., L.L.P. The corporate entity, Panterra GP, Inc., is the only plaintiff in this matter.

The Panterra entities were involved, pursuant to a construction contract, in a construction project consisting of the renovation and improvement of commercial space for use as a movie theater, for defendants Rosedale Bakersfield Retail VI, LLC (Rosedale) and Movie Grill Concepts XX, LLC (Movie Grill). The project was referred to as the Studio Movie Grill project or the Studio Movie Grill Bakersfield project. The defendants allegedly failed to make the full contractual payment for the project.

Panterra GP, Inc. filed the instant action seeking recovery under the construction or project contract. Panterra GP, Inc. encountered problems from the start, however, because the contract at issue, on its face was entered into by Panterra Development Ltd., L.L.P. (Rosedale was the other party to the contract). Panterra Development Ltd., L.L.P. was identified in the contract as the general contractor for the project. Unfortunately, Panterra Development Ltd., L.L.P. was unlicensed in California and was therefore

---

[1] Undesignated statutory references are to the Business & Professions Code.

precluded by this state's strict CSLL from filing a lawsuit to recover under the contract. Indeed, the existence of the CSLL explains why the instant lawsuit was initiated by Panterra GP, Inc., in the first place, rather than by Panterra Development Ltd., L.L.P.

Section 7026 of the CSLL defines a "contractor" as "*any person who undertakes to* or offers to undertake to, or purports to have the capacity to undertake to or submits a bid to, *or does himself or herself or by or through others*, construct, alter, repair, add to, subtract from, improve … any building … or other structure, project, development or improvement, or to do any part thereof." (Italics added.) The term "person," as used in section 7026, includes any "individual, … firm, partnership, corporation, limited liability company, association or other organization, or any combination thereof." (§ 7025.) "To protect the public, the [CSLL] [citation] imposes strict and harsh penalties for a contractor's failure to maintain proper licensure. Among other things, the CSLL states a general rule that, regardless of the merits of the claim, a contractor may not maintain any action, legal or equitable, to recover compensation for 'the performance of any act or contract' unless he or she was duly licensed '*at all times* during the performance of that *act or contract*.' (§ 7031, subd (a).)" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418.)

It is tedious, but necessary, to go through the procedural history of this matter in detail as it is highly relevant to the issues at hand.

## I. First Amended Complaint and Application of the *Vallejo Development* Case[2]

Panterra GP, Inc. filed a first amended complaint in this matter to recover payment allegedly owed under the contract between Panterra Development Ltd., L.L.P. and Rosedale. The first amended complaint blurred the distinction between the two Panterra entities by referring to these two separate entities "collectively" as "Panterra." The first amended complaint stated: "Plaintiff, Panterra GP, Inc.[,] The Sole General Partner of

---

**2** *Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929 (*Vallejo Development*).

Panterra Development Ltd., LLP, (hereinafter *collectively* 'Panterra') files this First Amended Complaint against [inter alia, Rosedale and Movie Grill]." (Italics added, unnecessary capitalization omitted.) The first amended complaint appeared to assume in places that Panterra Development Ltd., L.L.P. was essentially subsumed into or synonymous with Panterra GP, Inc. The first amended complaint alleged: "On or about May 9, 2017[,] Panterra and Rosedale entered into a contract (hereinafter the 'AGREEMENT'), whereby Panterra agreed to furnish all labor, materials, supplies and equipment necessary to perform the construction and improvements at the project commonly referred to as the Studio Movie Grill Bakersfield project." In stating "Panterra" entered into the contract with Rosedale, the complaint, by its own definition of "Panterra," alleged the Panterra entities *collectively* entered into the contract.

The contract at issue was attached to the first amended complaint (Exhibit A), as was a mechanics lien (Exhibit B), and a partial release of mechanics lien (Exhibit C). The contract itself was between Rosedale (identified as "the Owner") and Panterra Development Ltd., L.L.P. (identified as "the Contractor"). The contract was signed on behalf of "Panterra Development Ltd., L.L.P." by "Sean W. Rea, President of Panterra GP Inc.[,] The Sole General Partner of Panterra Development Ltd., LLP." As for the mechanics lien, it was claimed or recorded by Panterra Development Ltd., L.L.P. It confirmed that Panterra Development Ltd., L.L.P. "served as the general contractor" for the "construction of a work of improvement commonly known as Studio Movie Grill Bakersfield." The mechanics lien further confirmed that Panterra Development Ltd., L.L.P. furnished "labor, materials, equipment, services and/or work" to Rosedale, for the project. The mechanics lien was signed on behalf of "Panterra Development Ltd., L.L.P." by Sean W. Rea, President of Panterra GP, Inc., "sole General Partner" of "the Claimant." Mr. Rea also verified, *under penalty of perjury,* that the facts appearing in the mechanics lien were true. Finally, the partial release of mechanics lien, also signed and verified *under oath* by Mr. Rea, similarly confirmed that Panterra Development Ltd.,

3

L.L.P. had "furnished the labor, materials, equipment, services, and/or work" underlying the mechanics lien, to Rosedale.

Movie Grill filed a demurrer to the first amended complaint, which the trial court sustained (with leave to amend), on grounds that Panterra GP, Inc. did not have standing to seek payment pursuant to a contract between Rosedale and Panterra Development Ltd., L.L.P. The trial court stated: "First-amended Complaint is brought [by] plaintiff Panterra GP, Inc., the sole general partner of Panterra Development, Limited, LLP. Plaintiff has alleged to be a corporation under Texas and California laws. Panterra alleges it entered into an agreement with Rosedale[.] Exhibit A [to the first amended complaint, i.e., the mechanics lien,] indicates that the party that entered into the agreement with Rosedale is Panterra Development Ltd., LLP., not Panterra GP, Inc. Given the lack of allegations that establish Panterra GP's standing to act on behalf of Panterra Development, Limited, LLP. [for purposes of recovering under the contract], the demurrer on standing as to all cause[s] of action will be sustained with leave to amend."

The trial court's ruling was proper under well-established pleading rules. Facts appearing in exhibits attached to a complaint are accepted as true and are given precedence over any contrary allegations in the pleadings. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 (*Holland*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 (*Dodd*).) The allegations in the body of the first amended complaint indicated that Panterra Development Ltd., L.L.P. and Panterra GP, Inc. *collectively* entered into the project contract with Rosedale.[3] However, this allegation was squarely contradicted by all three exhibits to the first amended complaint, that is, the contract, the mechanics lien, and the partial release of mechanics lien, each of which clearly indicated that Panterra Development Ltd., L.L.P. was the

---

[3] The complaint alleged that "Panterra" entered into the contract. The complaint further alleged that "Plaintiff, Panterra GP, Inc.[,] The Sole General Partner of Panterra Development Ltd., LLP, (hereinafter collectively 'Panterra')" was filing the complaint.

4

"Contractor" that entered into the project contract with Rosedale and the general contractor for the project. Even if the first amended complaint were read to allege that Panterra GP, Inc. entered into the contract with Rosedale, as the trial court evidently did, that contention also conflicted with the above-described exhibits, which were properly accorded precedence over the contrary allegation in the body of the complaint as to the party that entered into the contract with Rosedale.

*Vallejo Development*, *supra*, 24 Cal.App.4th 929, is instructive. The plaintiff in that case, Vallejo Development Co. (VDC), recorded mechanics liens in connection with a real estate development project, claiming entitlement to over $17 million for " 'labor, services, equipment or materials' " it allegedly furnished for the project; VDC followed up with actions seeking to foreclose upon its mechanics liens. (*Id*. at p. 936.) VDC, which did not have a contractor's license, omitted allegations from its complaint and amended complaints that it had "agreed to provide and provided 'labor, equipment, services and materials' " for the project. (*Id*. at pp. 938, 947.) Rather, VDC alleged that it was merely a development company, not a general contractor, and had hired licensed, general contractors to do the work. (*Id*. at pp. 938, 941.) The trial court sustained the defendants' demurrers without leave to amend. (*Id*. at p. 937.)

*Vallejo Development* affirmed the trial court, noting that, "as a matter of law, allegations in a complaint must yield to contrary allegations contained in exhibits to a complaint." (*Vallejo Development*, *supra*, 24 Cal.App.4th at p. 946.) The court observed: "The mechanics' liens VDC seeks to enforce are attached as exhibits to each version of VDC's complaint, including the proposed second amended complaint. To the extent they conflict with factual allegations in the body of the complaint, the allegations contained in the mechanics' liens—made under oath on behalf of VDC by its senior vice president—must be accepted as true." (*Id*. at pp. 946-947.) The court concluded that, in light of the facts shown in the mechanics liens, the allegations of VDC's proposed second amended complaint were "insufficient to conceal its true status as a 'contractor.' " (*Id*. at

5

p. 947)  The situation in *Vallejo Development* is perfectly analogous to the situation in the present case, where Panterra Development Ltd., L.L.P., a partnership that was created to provide real property development services as its name reflects (see footnote 6, *post*),[4] took on the role of a general contractor; like VDC, when Panterra Development Ltd., L.L.P. allegedly did not receive the contracted-for payment for its services in full, it filed a mechanics lien for labor, equipment, material, and services provided.

*Vallejo Development* establishes that, at the demurrer stage, where the factual allegations in a complaint conflict with the allegations contained in a mechanics lien attached to the complaint, the allegations in the mechanics lien, which are made under oath, must be accepted as true.  Just as in *Vallejo Development*, here the allegations in the mechanics lien attached to the first amended complaint would properly be accepted as true, not the conflicting allegations in the body of that complaint.

Importantly, under the CSLL, the mere execution of a construction contract is an act " 'in the capacity of a contractor.' "  (*Brunzell Constr. Co. v. Barton Development Co*. (1966) 240 Cal.App.2d 442, 444; see *Vallejo Development*, *supra*, 24 Cal.App.4th at p. 940 [performance of "administrative" or "oversight" functions are acts " 'in the capacity of' a general … contractor … in fulfillment of contractual obligations owed to the owners of the property on which the improvements were installed"].)  In addition, the fact that the contracting party subcontracts with or uses "licensed contractors to provide the actual labor, equipment and materials to construct the infrastructure improvements is irrelevant. [The CSLL] plainly states that both the person who provides construction services himself and one who does so 'through others' qualifies as a 'contractor.' "  (*Vallejo Development*, *supra*, 24 Cal.App.4th at p. 941; see *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 74-75 (*Opp*) [for purposes of the CSLL and § 7031, the "issue … is not who 'did the work,' but who was 'engaged in the business or acting in the

---

[4]     Panterra GP, Inc.'s name reflects it was the general partner of another entity, namely, Panterra Development Ltd., L.L.P.

capacity of a contractor' "].) "The California courts have … long held that those who enter into construction contracts must be licensed, even when they themselves do not do the actual work under the contract. [Citations.] Indeed, if this were not the rule, the requirement that general contractors be licensed would be completely superfluous." (*Vallejo Development*, *supra*, at p. 941.)

By extension, the party that has the right to recover under the contract is the contracting party, rather than *any* duly licensed party that acted as a contractor on the project. (*Opp*, *supra*, 154 Cal.App.4th at p. 76, fn. 2 and 74 ["Business and Professions Code section 7031 makes it clear that the contractor's license is not required for the person who 'does the work' but, instead, for the person who is the [overall] building contractor."].)

The trial court properly sustained the demurrer to the first amended complaint on grounds that Panterra GP, Inc. was not the contracting party and therefore could not recover under the contract. Panterra GP, Inc. did not challenge the court's ruling. Rather, Panterra GP, Inc. filed a second amended complaint.

## II.     Second Amended Complaint and Application of the *Opp* and *WSS* Cases[5]

Panterra GP, Inc.'s second amended complaint similarly sought payment under the contract between Panterra Development Ltd., L.L.P. and Rosedale. Just like the first amended complaint, the second amended complaint sought to blur the distinction between the two Panterra entities by referring to these two separate entities "collectively" as "Panterra." Thus, the second amended complaint stated: "Plaintiff, Panterra GP, Inc.[,] The Sole General Partner of Panterra Development Ltd., LLP, (hereinafter *collectively* 'Panterra') files this Second Amended Complaint against [inter alia, Rosedale and Movie Grill]." (Italics added, unnecessary capitalization omitted.)

---

**5**     *Opp*, *supra*, 154 Cal.App.4th 71; *WSS Industrial Construction, Inc. v. Great Western Contractors, Inc*. (2008) 162 Cal.App.4th 581 (*WSS*).

The second amended complaint again alleged that "Panterra and Rosedale entered into a contract (hereinafter the 'AGREEMENT'), whereby Panterra agreed to furnish all labor, materials, supplies and equipment necessary to perform the construction and improvements at the project commonly referred to as the Studio Movie Grill Bakersfield project." However, the second amended complaint quoted, for the first time, a provision of the contract that provided, " 'The Contractor shall *designate in writing* a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The Term 'Contractor' means the Contractor or the Contractor's authorized representative.' " (Italics added.) The second amended complaint alleged that Panterra GP, Inc., as Panterra Development Ltd., L.L.P.'s sole general partner, was the "authorized representative" of Panterra Development Ltd., L.L.P., and hence was "the Contractor" identified in the contract. The second amended complaint alleged that Sean W. Rea, President of Panterra GP, Inc. signed the contract with Rosedale on behalf of Panterra Development Ltd., L.L.P, as Panterra GP, Inc. is the sole general partner and "authorized representative" of Panterra Development Ltd., L.L.P. The second amended complaint further alleged that "Panterra's partnership 'structure' was licensed" under the CSLL, as its general partner, Panterra GP, Inc., had a contractor's license.

The substance of Panterra GP, Inc.'s factual allegations in this regard was that Panterra GP, Inc. was Panterra Development Ltd., L.L.P.'s authorized representative by virtue of its relationship with Panterra Development Ltd., L.L.P., and therefore Panterra GP, Inc. could be considered as the "the Contractor" for purposes of the contract. In other words, although Panterra Development Ltd., L.L.P. entered into the contract, Panterra GP, Inc. could be seen as synonymous with Panterra Development Ltd., L.L.P. on account of its position as the latter's authorized representative, and therefore Panterra GP, Inc.'s contractor's license also covered Panterra Development Ltd., L.L.P.

The second amended complaint further alleged: "Thus, if the 'Contractor' listed in the AGREEMENT is Panterra Development, Ltd., LLP, and Panterra Development,

8

Ltd., LLP's authorized representative is Panterra GP, Inc., (**Contractors State License Board License #998537**) then there can be no controversy over whether Panterra holds a valid contractor's license. The 'Contractor's' authorized representative, Sean W. Rea, President of Panterra GP Inc.[,] The Sole General Partner of Panterra Development Ltd., LLP, executed the AGREEMENT. Panterra GP, Inc. holds a valid contractor's license with the Contractors State License Board. Contractor can be defined then as *either* Panterra Development, Ltd., LLP or its authorized representative, Panterra GP, Inc. (**Contractors State License Board License #998537**)." (Italics added, emphasis in original.) As to all the causes of action in the second amended complaint, Panterra GP, Inc. alleged it was entitled to payment under the contract because it was Panterra Development Ltd., L.L.P's authorized representative, in that "Panterra Development Ltd., LLP must act through its sole General Partner, Panterra GP, Inc."

Among the exhibits attached to the second amended complaint, were, once again, the project contract between Panterra Development Ltd., L.L.P. and Rosedale (Exhibit A), the mechanics lien filed by Panterra Development Ltd., L.L.P. (Exhibit F), and the partial release of mechanics lien filed by Panterra Development Ltd., L.L.P. (Exhibit G), each of which clearly indicated that Panterra Development Ltd., L.L.P. was the "Contractor" that entered into the project contract with Rosedale and was the general contractor for the project. Yet another exhibit attached to the second amended complaint was a bond to release mechanics lien, recorded by Movie Grill and its surety company; the obligee named in the bond was Panterra Development Ltd., L.L.P. (Exhibit K).

The trial court sustained Movie Grill and Rosedale's demurrer to all the four causes of action in Panterra GP, Inc.'s second amended complaint. The first cause of action was for recovery on the mechanics lien release bond recorded by Movie Grill. As to this cause of action, the trial court stated: "On July 17, 2018, Panterra Development [Ltd., L.L.P.] recorded a claim of mechanic's lien in its own name on the [subject property] in the amount of $2,997,545.75 for labor, materials, equipment, services and/or

9

work furnished by Panterra Development [Ltd., L.L.P.] for a work of improvement performed by it on the [subject property]. Exhibit [F] to the Second Amended Complaint [i.e., the mechanics lien]. As was done with the Agreement, the mechanic's lien was executed by Sean W. Rea, president of Panterra [GP, Inc.], on behalf of Panterra Development [Ltd., L.L.P.]." The court continued: "A mechanic's lien release bond and rider in connection with Panterra Development[] [Ltd., L.L.P.'s] mechanics lien on the [subject property] was recorded October 22, 2018. The First Cause of Action seeks recovery of the amount claimed under the original mechanic's lien from the bond issued by defendant North American Specialty Insurance Company." The court ruled: "The demurrer to the First Cause of Action asserts that because Panterra [GP, Inc.] is not the claimant on the mechanic's lien and is not named in the release bond it has no standing as a lien claimant under Civil Code section 8460 to pursue recovery on the bond. The Court sustains the demurrer to the First Cause of Action without leave to amend."

The court next addressed the second through fourth causes of action. The court stated: "The Second through Fourth Causes of Action are for breach of contract, account stated and open book account seeking damages in the amount of $2,997,545.75 for the alleged failure of defendants to pay Panterra for the work done on the Project." The court ruled: "The demurrers to the Second through Fourth Causes of Action assert that because Panterra [GP, Inc.] was not a party to the Agreement it has no standing to pursue these causes of action. Rather, the contracting party was Panterra Development. The Court sustains the demurrers to the Second through Fourth Causes of Action with leave to amend." The trial court explained its reasoning:

> "The primary issue that has been before this Court throughout this litigation is the issue of Panterra [GP, Inc.'s] standing given that the Agreement identified the 'Contractor' as Panterra Development [Ltd., L.L.P.], the Agreement is signed by Panterra Development [Ltd., L.L.P.] (by its authorized General Partner, Panterra [GP, Inc.]), and the mechanic's lien was recorded by Panterra Development as the lien claimant. *The obvious problem is that Panterra Development [Ltd., L.L.P.] did not have a contractor's license as required by Business and Professions Code section*

10

*7031 in order to collect the money it claims is owed to it for the Project.* However, Panterra [GP, Inc.], the general partner acting on behalf of Panterra Development [Ltd., L.L.P.] was a licensed contract[or]. To save its claims from extinction, at least at the pleading stage, Panterra [GP, Inc.] has put forth a series of arguments asserting that it does have standing to assert the claims on behalf of Panterra Development.

"Panterra [GP, Inc.] argues, to no avail, that Panterra [GP, Inc.] is authorized to perform all acts on behalf of the limited partnership and therefore the partnership 'structure' was licensed through issuance of the required contractor's license to Panterra [GP, Inc.]. A general partner certainly has authority to act on behalf of the limited partnership. Corp. Code section 15904.06. However, '[a] general partner is an agent of the limited partnership for purposes of the partnership's activities.' 9 Witkin Summary of Cal. Law (11th) Partnership § 90.

"Similarly, Panterra [GP, Inc.] alleges in the Second Amended Complaint that under the definitions incorporated into the Agreement, the Contractor is allowed to designate an 'authorized representative' who shall have 'express authority to bind the Contractor with … respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.' [Citation.] Panterra [GP, Inc.] asserts that it is the authorized representative under the terms of the Contract. Even taken as true, this allegation does not assist Panterra [GP, Inc.] in stepping into the shoes of the "Contractor" as it merely defines which person or entity may act for the Contractor in a representative capacity.

"Several cases are instructive regarding whether an individual or entity without the required license acting in the capacity of a contractor may rely on the license held by a different individual or entity. First, in *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71 ('*Opp*'), the court upheld the trial court's granting of summary judgment in favor of defendant where the president of the corporation which entered the construction contract held the contractor's license but the corporation did not have a license. The court held that the corporation was the contracting party and was unlicensed and [its] claim was barred by Business and Professions Code section 7031.

"Similarly, in *WSS Industrial Construction, Inc. v. Great Western Contractors, Inc.* (2008) 162 Cal.App.4th 581 ('*WSS*'), the court held that, under section 7031, a corporation could not recover under a subcontract because it performed a portion of the work before it obtained a license. It was irrelevant that the corporation's president and a WSS partnership held

11

valid contractor's licenses.  The unlicensed corporation was the entity that entered the subcontract and was thus the person engaging in the business or acting in the capacity of a contractor.

"In *Ball v. Steadfast-BLK* (2011) 196 Cal.App.4th 694 ('*Ball*'), an individual owner, Ball, had received a contractor's license under the fictitious name 'Clark Heating and Air Conditioning.'  Ball later entered into contracts under the transposed name 'Clark Air Conditioning & Heating.'  When Ball sued in his own name to foreclose a mechanic's lien arising from nonpayment under the contracts, the trial court sustained a demurrer without leave to amend, holding that Ball was not a licensed contractor to do business under the name of Clark Air Conditioning & Heating.  The appellate court reversed, holding that the trial court had confused the individual owner to whom the license was issued with the fictitious business name used to conduct his business.  As a sole proprietorship, Clark Heating and Air Conditioning was not a legal entity separate from its individual owner.

"The allegations of the Second Amended Complaint present a different scenario than in *Ball* and more akin to *Opp* and *WSS*.  Here, the contracting entity, Panterra Development [Ltd., L.L.P.], is a separate legal entity from its general partner, Panterra [GP, Inc.], which is established as a separate legal entity, a Texas corporation.  Exhibit 'E' to the Second Amended Complaint.[6]  Panterra [GP, Inc.] was authorized to act on behalf of the partnership as an authorized representative.  Second Amended Complaint … and Exhibit 'J.'[7]  Therefore, Panterra [GP, Inc.] has failed to establish its standing as the plaintiff in this action."  (Italics added.)

In sustaining the demurrer to Panterra GP, Inc.'s second amended complaint, the trial court once again got it right.  "[U]nder section 7031[, subdivision ](a), if an

---

**6**    Exhibit E consisted of documents showing that Panterra GP, Inc. was registered as a corporation in both Texas and California.

**7**    Exhibit J contained the partnership agreement for Panterra Development Ltd., L.L.P.  The agreement was made by and among Panterra GP, Inc., as the sole general partner, and multiple limited partners, under Texas law.  The agreement states that "[t]he purpose of the Partnership shall be to engage in any lawful act or activity for which limited partnerships may now or hereafter be organized under the laws of the State of Texas, *including the business of providing real property development services.*"  (Italics added.)  (See *Vallejo Development*, *supra*, 24 Cal.App.4th at pp. 938, 940-941, 944 [where unlicensed, real property development company acted as general contractor, it could not recover unpaid contractual amount for providing labor, equipment, materials, and services for the project].)

12

individual or entity without a required license is engaged in the [contracting] business or acting in the capacity of a contractor, a license held by a different individual or entity does not permit the unlicensed contractor to recover." (*Montgomery Sansome LP v. Rezai* (2012) 204 Cal.App.4th 786, 795; see *Lewis & Queen v. N.M. Ball Sons* (1957) 48 Cal.2d 141, 147, 149 [in order for a partnership to recover for unpaid sums due under construction contract or defend against a § 7031, subd. (b) refund claim, the partnership itself must be licensed; it is not enough that one of the partners is licensed].) As noted above, the party that has the right to recover under the contract is the contracting party, not *any* duly licensed party that acted as a contractor on the project. (*Opp*, *supra*, 154 Cal.App.4th at p. 76, fn. 2 and 74 ["Business and Professions Code section 7031 makes it clear that the contractor's license is not required for the person who 'does the work' but, instead, for the person who is the [overall] building contractor."].)

In *Opp*, an individual (Opp) held a contractor's license. (*Opp*, *supra*, 154 Cal.App.4th at p. 72.) Opp was also the president of a corporation, MCI, that did not hold a license. (*Ibid.*) Opp, as president of MCI, entered into a subcontract and inserted his individual contractor's license number where the contract documents called for a license number. (*Id.* at pp. 72-73.) When MCI later sued for compensation under the subcontract, the court entered summary judgment for the defendant insurer, and the appellate court affirmed. (*Id.* at pp. 73, 74-76.) The court held that MCI was the contracting party and was unlicensed, and that MCI's claim therefore was barred by section 7031. (*Opp*, *supra*, at pp. 74-76.) The court rejected Opp's argument that *he* should be permitted to recover because he " 'did the work' " on the construction project; the court held that, under section 7031, "[t]he issue … is not who 'did the work,' but who was 'engaged in the business or acting in the capacity of a contractor.' " (*Opp*, *supra*, at pp. 74-75.)

Similarly, in *WSS*, the appellate court held that, under section 7031, a corporation could not recover under a subcontract because it performed a portion of the work before

13

it obtained a license. (*WSS*, *supra*, 162 Cal.App.4th at pp. 586, 589-593.) It was irrelevant that the corporation's president and a WSS partnership had held valid licenses. (*Id*. at p. 594 & fn. 8.) The unlicensed corporation was the entity that entered the subcontract and "was thus the 'person' engaging in the business or acting in the capacity of a contractor." (*Id*. at pp. 589, 594; see § 7026 [" 'Contractor' includes subcontractor."].)

Here, there was no dispute that the construction project for Studio Movie Grill Bakersfield required a contractor's license. (See §§ 7055-7058 [describing branches of contracting business and parallel classifications for contractors' licenses].) In sustaining the demurrer to the second amended complaint, the trial court properly found the construction contract for the project was an agreement between Panterra Development Ltd., L.L.P. (the general contractor for the project) and Rosedale, the owner of the property at issue. The first and second amended complaints contained exhibits, such as a mechanics lien recorded by Panterra Development Ltd., L.L.P., that established that Panterra Development Ltd., L.L.P. was the "general contractor" for the project and had furnished "labor, materials, equipment, services, and/or work" for it. "[F]acts appearing in exhibits attached to the complaint are given precedence over inconsistent allegations in the complaint." (Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) § 7:47.1; *Moran v. Prime Healthcare Management, Inc*. (2016) 3 Cal.App.5th 1131, 1145-1146; *Stella v. Asset Management Consultants, Inc*. (2017) 8 Cal.App.5th 181, 193-194.) Having properly concluded that Panterra Development Ltd., L.L.P. was the contracting party and the general contractor, and, in turn, that only Panterra Development Ltd., L.L.P. had the right to seek compensation for the equipment furnished, materials provided, and services rendered under the contract, the court appropriately sustained the demurrer to the second through fourth causes of action in the second amended complaint.

Panterra GP, Inc. did not challenge the trial court's ruling. Rather, Panterra GP, Inc. filed a third amended complaint. (The trial court denied leave to amend as to the first cause of action, that is, recovery on the mechanics lien release bond recorded by Movie Grill in response to Panterra Development Ltd., L.L.P.'s mechanics lien, but granted leave to amend as to the second through fourth causes of action, all of which sought payment under the contract.)

**III. Third Amended Complaint and Panterra GP, Inc.'s "Contract Reformation" Claim; Application of the Sham Pleading Doctrine**

The third amended complaint, for the first time, indicated it was being filed solely on behalf of Panterra GP, Inc., rather than Panterra GP, Inc. and Panterra Development Ltd., L.L.P. "*collectively*"; however, the complaint at times used the term "Panterra" to refer to both Panterra entities (see, e.g., reference to "Panterra's partnership 'structure' "). The third amended complaint repeated some of the allegations of the second amended complaint, for example, that Panterra GP, Inc. was the authorized representative of Panterra Development Ltd., L.L.P. and that "Panterra's partnership 'structure' was licensed through" the license issued to Panterra GP, Inc. The complaint reiterated the causes of action seeking payment under the contract that were in the second amended complaint (i.e., breach of contract, account stated, and open book account), but added a new, first cause of action styled, "Reformation of Contract Based on Unilateral or Mutual Mistake."

As to the new, first cause of action, that is, reformation of contract based on unilateral or mutual mistake, Panterra GP, Inc. alleged that it was "entitled to reformation of the Agreement to reflect that Panterra GP Inc. is the General Contractor of Record" for the Studio Movie Grill Bakersfield project. Panterra GP, Inc. alleged that the contract (Document A102-2007), between Panterra Development Ltd. L.L.P. ("the Contractor") and Rosedale ("the Owner"), "does not represent the true agreement of the parties because it does not identify that *Panterra GP Inc. was contracting to perform the general*

15

*contracting services* under the Agreement." (Italics added.) Panterra GP, Inc. alleged the contract did not correctly reflect "the identity of the parties to the Agreement." Panterra GP, Inc. alleged it was the contracting party that had "agreed to [and did] furnish all labor, materials, supplies and equipment necessary to perform the construction and improvements at the project commonly referred to as the Studio Movie Grill Bakersfield project."

As to the second cause of action in the third amended complaint, breach of contract, Panterra GP, Inc. alleged that under the contract, Panterra GP, Inc. "agreed to furnish all labor, material, equipment, and services as the general contractor of record to perform the construction and improvements at the [Studio Movie Grill Bakersfield] Project," it had done so, and, as the contracting party and licensed general contractor, it was entitled to payment under the contract.

As to the third and fourth causes of action, account stated and open book account, Panterra GP, Inc. alleged that Panterra GP, Inc. contracted to furnish and had "furnished all labor, material, equipment, and services as a general contractor for the construction and improvements at the [Studio Movie Grill Bakersfield] Project," and was entitled to payment under the contract.

The contract at issue, Document A102-2007, "Standard Form Agreement Between Owner and Contractor," was attached to the third amended complaint as Exhibit A. As noted above, the contract identified Rosedale as "the Owner" and Panterra Development Ltd. L.L.P. as "the Contractor"; it was signed by the respective representatives of Rosedale ("Owner") and Panterra Development Ltd. L.L.P. ("Contractor"). Other exhibits were also attached to the third amended complaint; these replicated some of the exhibits attached to the second amended complaint.

The defendants filed a demurrer to the third amended complaint; the trial court sustained the demurrer without leave to amend, in a detailed ruling and subsequent order, which Panterra GP, Inc. challenges here. The trial court noted that, as a licensed entity

16

that performed work on the Studio Movie Grill project, Panterra GP, Inc. was free to bring a quantum meruit claim against the defendants. In making its ruling, the trial court took judicial notice of Panterra GP, Inc.'s second amended complaint and attached exhibits.[8] I would affirm the trial court.

### A. Analysis

An order sustaining a demurrer is reviewed de novo to determine whether the complaint states a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) On appeal, we " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) An exception to this principle applies when a plaintiff alleges facts that contradict an earlier version of a complaint in an effort to avoid defects in his or her claim. In that case, under the so-called "sham pleading doctrine," a reviewing court may take judicial notice of the prior pleading and disregard inconsistent allegations in the amended complaint unless the plaintiff provides a satisfactory explanation for the change. (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425-426; see *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1109 [sham pleading doctrine applies to both verified and unverified complaints].)

When a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742-743; *Pierce v. Lyman*, *supra*, 1 Cal.App.4th at p. 1109; *Holland*, *supra*, 86 Cal.App.4th at p. 1447 [if an amended complaint contradicts facts pleaded in an earlier complaint, "we will take judicial notice of the earlier complaints and disregard inconsistent allegations, absent an explanation for the inconsistency"].) As noted earlier, facts appearing in exhibits attached to a complaint will also be accepted as

---

[8]     The trial court's ruling is set forth in detail in the majority opinion, *ante*.

17

true and will be given precedence over any contrary allegations in the pleadings. (*Holland*, *supra*, 86 Cal.App.4th at p. 1447; *Dodd*, *supra*, 222 Cal.App.3d at p. 1627.)

Indeed, " '[f]ace of the complaint' includes matters shown in *exhibits* attached to the complaint and incorporated by reference; or in a *superseded complaint* in the same action." (Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) § 7.9; *Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 94 [same]; *Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95 [exhibits and attachments part of the complaint]; *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505 ["we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits"]; *George v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 1112, 1130 ["trial court was not required to credit plaintiff's allegations that extrinsic evidence 'renders the insurance contract at issue here ambiguous' " where language of policy attached to complaint showed otherwise].) Thus, in evaluating an amended complaint, "[f]acts appearing in an *exhibit* attached to the original complaint are [properly] considered, and contrary allegations in later pleadings that omit the exhibit may be disregarded." (Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) § 6:710; see *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044-1045.)

Additionally, "[a] demurrer is directed to the face of the complaint and related matters subject to judicial notice." (Moore et al., Cal. Civil Practice Procedure (2021) § 9:1.) "Therefore, in ruling on a demurrer, a court may take judicial notice of admissions or inconsistent statements by plaintiff in earlier pleadings in the same lawsuit … and may *disregard conflicting factual allegations* in the complaint." (Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) § 7:47.) "Thus, a pleading valid on its face may nevertheless be subject to demurrer when matters judicially noticed by the court render the complaint meritless." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

The trial court's ruling sustaining a demurrer will be upheld if the demurrer could have been properly sustained on any ground. (Edmon & Karnow, Cal. Prac. Guide Civ. Pro. Before Trial (The Rutter Group) § 7:149.1; *Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987, 994; *Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585.)

The majority opinion focuses on Panterra GP, Inc.'s third amended complaint, without appropriately considering it in relation to the prior complaints or the exhibits attached to the prior complaints, all of which are subject to judicial notice and are properly considered in evaluating the validity of the operative complaint.[9]

Here, Panterra GP, Inc.'s *second* amended complaint, under the heading, "Parties to the Contract Between Panterra and Rosedale," alleged that Panterra GP, Inc. was "the Contractor" identified in the project contract, under the terms thereof, *because it was the authorized representative of Panterra Development Ltd., L.L.P.*, the actual party and signatory to the contract. (Unnecessary capitalization omitted.) The second amended complaint further alleged, under the heading, "Facts Relevant to All Causes of Action," that "Panterra GP, Inc. (Contractors State License Board License #998537) as the sole general partner, is operating for and on behalf of Panterra Development Ltd., LLP." Finally, the second amended complaint alleged, as to all the causes of action seeking payment under the contract, that Panterra GP, Inc. could seek payment under the contract, on behalf of Panterra Development Ltd., L.L.P., because "Panterra Development Ltd., LLP must act through its sole General Partner, Panterra GP, Inc."

---

[9] It bears mention that in the third amended complaint, Panterra GP, Inc. again alleges: "Panterra's partnership 'structure' was licensed through issuance by the Contractors State License Board of a license to the General Partner, which by law, performs all acts and exercises all powers of the partnership." This allegation has no merit on its face, as the trial court had determined in sustaining the demurrer to the second amended complaint. (See *Lewis & Queen v. N.M. Ball Sons*, *supra*, 48 Cal.2d at pp. 147, 149 [when a partnership is involved in contractual construction work requiring a license, the partnership itself must be licensed; it is not enough that one of the partners is licensed].)

Panterra GP, Inc.'s *third* amended complaint includes a new cause of action, i.e., reformation of contract based on unilateral or mutual mistake, and, in relation to this cause of action, contains factual allegations to the effect that *the contract did not correctly reflect "the identity of the parties to the Agreement"* in that Panterra GP, Inc. was *itself* the contracting party and the general contractor of record for the project. These allegations in the *third* amended complaint contradict and are inconsistent with the allegations in the *second* amended complaint, wherein it was alleged that Panterra GP, Inc. should be considered the contracting party and the general contractor based on its capacity *as the authorized representative of Panterra Development Ltd., L.L.P.*, which was properly reflected in the contract as the actual party and signatory to the contract.

The sham pleading doctrine applies here and requires us to disregard the inconsistent allegations added to the third amended complaint in support of the contract reformation claim added therein. Panterra GP, Inc. cannot avoid the defects in the allegations contained in the second amended complaint by filing a third amended complaint encompassing factual allegations that are inconsistent with the allegations in the prior complaint.[10]

The allegations in Panterra GP, Inc.'s third amended complaint also conflict with facts alleged in exhibits attached to its prior complaints, and the facts alleged in exhibits are given precedence. To reiterate, Panterra GP, Inc. alleged in the third amended

---

**10** The majority observes that "[i]t seems clear that the language of the CSLL does not bar the claims of Panterra GP." (Maj. opn., *ante* at p. 12.) The majority can only make this statement by (1) ignoring the trial court's careful explanation, in relation to Panterra GP, Inc.'s second amended complaint, as to why application of the CSLL precluded Panterra GP, Inc. from recovering under the construction contract at issue; and (2) implausibly deeming Panterra GP, Inc.'s prior inconsistent allegations in the second amended complaint as an "alternative" theory of recovery (rather than an inconsistent theory of recovery). Since the prior allegations were that Panterra Development Ltd., L.L.P. was the general contractor and Panterra GP, Inc. simply its authorized representative, the prior allegations are inconsistent with the subsequent theory that Panterra GP, Inc. was itself the general contractor and principal in the matter.

20

complaint that Panterra GP, Inc., not Panterra Development Ltd., L.L.P., was the contracting party and general contractor for purposes of the contract with Rosedale for the Studio Movie Grill Bakersfield project. Panterra GP, Inc. thus alleged that it was the party that had agreed to, and did, furnish "all labor, materials, supplies and equipment necessary to perform the construction and improvements at the project." Panterra GP, Inc. in turn sought reformation of the contract, based on unilateral or mutual mistake, to reflect that Panterra GP, Inc. was the contracting party and general contractor for the project.

Panterra GP, Inc.'s claims are, however, contradicted by exhibits attached to its first and second amended complaints, specifically the mechanics lien recorded by Panterra Development Ltd., L.L.P., the subsequent, partial release of mechanics lien also recorded by Panterra Development Ltd., L.L.P., and the mechanics lien release bond recorded by Movie Grill and its surety company. The release bond identified Panterra Development Ltd., L.L.P. as the obligee, given that the underlying mechanics lien was recorded by Panterra Development Ltd., L.L.P. Indeed, in the first and second amended complaints, Panterra GP, Inc. sought recovery based on the mechanics lien recorded by Panterra Development Ltd., L.L.P. and the subsequent bond to release mechanics lien recorded by Movie Grill and its surety company.

Notably, it was only after Movie Grill and Rosedale pointed out that Panterra Development Ltd., L.L.P. was unlicensed, thereby precluding recovery through the mechanics lien release bond (as the trial court sustained defendants' demurrer on this cause of action without leave to amend), that Panterra GP, Inc. advanced the allegation that the contract incorrectly listed Panterra Development Ltd., L.L.P. as the contracting party and general contractor for the project and sought reformation of the contract on the theory of unilateral or mutual mistake. Previously, Panterra GP, Inc. sought to rely on the very facts asserted in the mechanics lien and mechanics lien release bond that later became highly inconvenient. Panterra GP, Inc. cannot have it both ways.

21

The allegations in the third amended complaint are inconsistent with facts appearing in the mechanics lien and other exhibits attached to Panterra GP, Inc.'s earlier complaints. (See *Vallejo Development*, *supra*, 24 Cal.App.4th at pp. 946-947 [where allegations in a complaint conflict with allegations appearing in a mechanic's lien that constitutes an exhibit, the allegations in the mechanics lien must be accepted as true as they are made under oath].) The mechanics lien *unambiguously* specified that Panterra Development Ltd., L.L.P. was the "general contractor" for the Studio Movie Grill Bakersfield project and had furnished "labor, materials, equipment, services, and/or work" for the project. Crucially, the facts asserted in the mechanics lien were verified as true and correct *under penalty of perjury by none other than Panterra GP, Inc.'s own president* (who also signed the construction contract on behalf of Panterra Development Ltd., L.L.P.). The subsequent, partial release of mechanics lien contained similar facts that were again verified, *under oath*, *by Panterra GP, Inc.'s president himself.*

Is Panterra GP, Inc. contending, as the majority would have it, that its president perjured himself in recording the mechanic's lien for $2,997,545.75 on behalf of Panterra Development Ltd., L.L.P.? The facts reflected in the mechanics lien take precedence over conflicting allegations in the complaint, and the latter are disregarded. The facts that are properly taken as true establish that Panterra Development Ltd., L.L.P. was the contracting party and general contractor for the project. Accordingly, the first cause of action, reformation of contract based on unilateral or mutual mistake as to the identity of the contracting parties, fails.

Panterra GP, Inc. did not provide the trial court with any explanation as to the stark inconsistency between its prior allegations and exhibits on the one hand, and its new allegations to the effect the contract did not reflect the correct parties, on the other. (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456, fn. 12; see *American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 879 ["[c]ourts are understandably suspicious of a party's belated claim of mistaken admission

22

of facts where the party has had unrestricted access to the facts, presumptive knowledge of what occurred, and several opportunities to present the correct facts."].)

The majority makes much of the fact, referenced in the third amended complaint and reflected in exhibits thereto, that Panterra GP, Inc. was listed as the "contractor" for the Studio Movie Grill project in the building permit and certificate of occupancy issued for the project by the City of Bakersfield. The fact that the building permit and certificate of occupancy reflect Panterra GP, Inc. as the contractor is entirely unsurprising and to be expected given, as reflected in Panterra GP, Inc.'s second amended complaint, that Panterra GP, Inc. performed work on the project under the auspices of Panterra Development Ltd., L.L.P. Indeed, when Panterra GP, Inc.'s counsel told the trial court that "the evidence is going to show that the permits on this project were pulled by GP, the licensed contractor," the trial court responded, "That wouldn't surprise anyone"; Panterra GP, Inc.'s counsel agreed with the court's assessment. The building permit and certificate of occupancy do not shed light on the question of the identity of the *contracting party* and the *general contractor* for the project. The majority is conjuring up a "factual" dispute where none exists.[11]

Finally, as the trial court noted in sustaining the demurrer to the third amended complaint, Panterra GP, Inc.'s claim for contract reformation to change the parties to the contract was also foreclosed by binding California Supreme Court precedent, namely, *Mabb v. Merriam*, *supra*, 129 Cal. 663. *Mabb* held: "While a court of equity will reform contracts under many varying circumstances, still it has no power to make a new contract.

---

[11]     The majority insists the building permit and certificate of occupancy are "germane" to the issue of which entity acted as the overall project contractor. (Maj. opn., *ante* at p. 16.) That may be so in an attenuated sense, but the fact that the mechanics lien clearly and unambiguously specified that Panterra Development Ltd., L.L.P acted as the "general contractor for the [subject] Project," and was owed the sum total of the payment that was allegedly outstanding for a variety of things, and the mechanics lien was verified under oath, means there is no "factual" dispute as to the identity of the general contractor for the project. (See *Vallejo Development*, *supra,* 24 Cal.App.4th at pp. 946-947.)

23

Its power is simply to reform a contract already made." (*Id*. at p. 664.) *Mabb* explained that "a court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing." (*Ibid*.) *Mabb* clarified that a contract between parties cannot be reformed to change a party thereto, regardless of whether the party in question was on the contract "by mistake," "through ignorance of law or fact," or "with knowledge of everything." (*Ibid*.) *Mabb* concluded: "A court of equity cannot change an agreement between J.J. Mabb and Merriam to an agreement between J.W. Mabb and Merriam. This would be to make a new contract, and not to reform a contract already made." (*Ibid.*) *Mabb*'s holding is consistent with Civil Code section 3399, an 1872 statute that predates *Mabb* and permits reformation of a contract subject to the limits established by *Mabb*. While *Mabb* has been criticized, and it would appear correctly so, it has not been overruled and we are bound to follow it.

As the trial court noted, the remaining causes of action in the third amended complaint relied on the "substitution of Panterra GP[, Inc.] as the contractor under the terms of the construction contract," and they too failed. The trial court therefore properly sustained the demurrer to the third amended complaint.

I would deny Panterra GP, Inc.'s petition for writ of mandate.


SMITH, J.